**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIERRA CLUB,<br>Plaintiff,<br>v.<br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br>Defendants. | Civil Action No. 05-209 (EGS) |

**MEMORANDUM OPINION**

Pending before the Court are plaintiff's and defendants' motions for summary judgment, and defendants' motion for reconsideration of the Court's denial of defendants' motion to dismiss the complaint. Plaintiff brings this action to challenge the Environmental Protection Agency's ("EPA") handling of the permitting process for a pulp and paper mill operated by Buckeye Florida, LLP, (the "Buckeye Mill"). All of the motions center on the same purely legal issue: whether this Court can direct the EPA to exercise or assume jurisdiction over the permit application for Buckeye Mill. Upon consideration of the parties' motions, the responses and replies thereto, the arguments presented at the hearing on January 16, 2007, the applicable law, and the entire record, the Court determines that it lacks jurisdiction over plaintiff's claims. Therefore, for the reasons

stated herein, plaintiff’s Motion for Summary Judgment is **DENIED**, defendants’ Motion for Summary Judgment is **GRANTED**, and defendants’ Motion for Reconsideration is **DENIED** as moot.

**BACKGROUND**

This case involves a state permit proceeding for a National Pollutant Discharge Elimination System (“NPDES”) permit for the Buckeye Mill, which is located on the Fenholloway River in Perry, Florida. The facility discharges wastewater into the Fenholloway River, and is therefore required pursuant to section 402 of the Clean Water Act (“CWA”) to obtain an NPDES permit. Since 1995, the state of Florida has had an NPDES program approved by EPA, which is administered by the Florida Department of Environmental Protection (“FDEP”). While the state now possesses the primary authority to issue NPDES permits, EPA retains oversight of the permitting process.

The permit proceeding at issue in this case was initiated on May 25, 1995, when Buckeye submitted an application to renew its state industrial wastewater discharge permit. On October 23, 1997, FDEP issued a proposed permit based on Buckeye’s permit application. Buckeye proposed and FDEP approved a scheme for Buckeye to build a 15-mile pipeline to carry the discharge downstream and dump it into the Fenholloway estuary.[1] Pursuant

[1] Because the mill uses much of the water that makes up the river's flow, this plan would eliminate several miles of the

to its oversight authority under CWA section 402(d), EPA objected to the proposed permit on March 26, 1998. On June 23, 1998, FDEP and Buckeye requested that EPA hold a public hearing on EPA's objections, as provided by CWA section 402(d)(4) and 40 C.F.R. § 123.44(e). Following litigation in this Court, *see American Canoe Association v. EPA*, No. 00-2827-EGS, EPA convened the hearing regarding its objections on April 22, 2004, in accordance with a settlement agreement between the parties.

By letter dated January 3, 2005, EPA notified FDEP of its determination regarding each of EPA's 1998 objections in light of the information presented at the objections hearing and other information in the record. Specifically, EPA modified one of the objections, withdrew one of the objections, and reaffirmed the four remaining objections. EPA also notified FDEP that pursuant to 40 C.F.R. § 123.44(h)(2), FDEP was required to submit a revised permit that satisfied each of EPA's objections within 30 days of the determination or exclusive authority to issue the permit would pass to EPA.

On February 2, 2005, after plaintiff filed its initial complaint in this case, but within the time provided under 40 C.F.R. § 123.44(h)(2) to address EPA's objections, FDEP submitted a revised proposed permit to EPA. EPA subsequently notified FDEP

---

river for months at a time. Hence, Plaintiff has deemed this the "river-in-a-pipe" plan.

that "since the February 2, 2005 revised permit was timely submitted, and addressed all outstanding objections raised by EPA, exclusive jurisdictional authority for the Buckeye permit continues to reside with the FDEP and does not pass to EPA."

Plaintiff filed this case in January 2005 to challenge the EPA's handling of the Buckeye Mill permitting process. Plaintiff seeks to force the EPA to assume jurisdiction over the permitting process, instead of leaving it to FDEP. Defendants filed a motion to dismiss for lack of jurisdiction. After a hearing in March 2006, the Court issued an order that denied the motion to dismiss and directed the parties to file and brief motions for summary judgment. Defendants filed a motion for reconsideration of the Court's denial of the motion to dismiss and both parties filed motions for summary judgment.

**STANDARD of REVIEW**

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The

non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

**ANALYSIS**

Plaintiff brings this suit under the citizen-suit provision of the CWA. Defendants contend that this Court lacks subject matter jurisdiction over the suit because it is barred by sovereign immunity. The citizen-suit provision of the CWA provides a limited waiver of sovereign immunity for claims "where there is alleged a failure of the [EPA] Administrator to perform any *act or duty* under the this chapter which is *not discretionary* with the Administrator." 33 U.S.C. § 1365(a)(2) (emphasis added); *see Nat'l Wildlife Fed'n v. Browner*, 127 F.3d 1126, 1128 (D.C. Cir. 1997). Thus, the Court only has jurisdiction if EPA has an unfulfilled, non-discretionary duty under the CWA. Plaintiff argues that CWA section 402(d)(4), EPA's implementing regulations, and/or Florida's implementing regulations create a nondiscretionary duty for EPA to assume jurisdiction over the Buckeye Mill permit. Therefore, the key question is whether, in fact, the CWA, EPA's regulations, or Florida's regulations create any tangible duty or proscribe any act that EPA must perform in this situation.

**I. Duty Derived from the CWA**

The CWA provision at issue is section 402(d)(4), which states:

> In any case where . . . the Administrator . . . objects to the issuance of a permit, on request of the State, a public hearing shall be held by the Administrator on such objection.  If the State does not resubmit such permit revised to meet such objection within 30 days after completion of the hearing . . . the Administrator *may* issue the permit . . . in accordance with the guidelines and requirements of the this chapter.

33 U.S.C. § 1342(d)(4) (emphasis added).  This provision clearly creates one duty: the EPA can issue a permit if it objected to the state's permit, and the state has not amended its permit to meet the objection within 30 days of the hearing.  Congressional use of the term "may" also clearly indicates that this duty is discretionary.  *See Int'l Union, UAW v. Dole*, 919 F.2d 753, 756 (D.C. Cir. 1990) (holding that "may" confers discretion, while "shall" usually refers to an obligation to act).  This discretionary duty cannot be challenged under the CWA citizen-suit provision, but could be challenged under the Administrative Procedure Act ("APA").  *See Nat'l Wildlife Fed'n*, 127 F.3d at 1131 (analyzing a similar discretionary oversight provision of the CWA and concluding that the review process could only be challenged under the APA).  Such an APA challenge, however, can only be brought in the Circuit Court of Appeals.  *See* 33 U.S.C. § 1369(b)(1) (granting Court of Appeals' jurisdiction over certain

CWA claims); *In re Bluewater Network*, 234 F.3d 1305, 1310-11 (D.C. Cir. 2000) (discussing agency unreasonable delay claims).

Plaintiff contends that this provision implicitly creates another duty: EPA must "assume jurisdiction" over the permitting process if it objected to the state's permit, and the state has not amended its permit to meet the objection within 30 days of the hearing.  Plaintiff argues that this duty is non-discretionary, and therefore grounds for a CWA citizen-suit.  Plaintiff claims that the assumption of jurisdiction is a necessary prerequisite for EPA to decide whether to issue its own permit.

This argument is problematic because EPA need not take any concrete steps for it to "assume jurisdiction" under this provision.  Under section 402(d)(4), EPA automatically gains authority to issue a permit if the state has not met its objection within 30 days.  There is no action that the EPA must undertake.  EPA does not have to notify the state, or even file one piece of paperwork as far as the statute is concerned.

Without any tangible act or duty imposed on EPA, it would be useless for the Court to have jurisdiction to enforce this "duty."  Were the Court to have jurisdiction and find that EPA has not complied with this provision, the Court could not direct EPA to take any specific action.  To merely declare that EPA has jurisdiction to issue a permit does not require EPA to take any

action.  Nor could the Court direct EPA to issue its permitting decision because, as discussed above, only the Circuit Court has jurisdiction to do that.

While its argument is clever, plaintiff is essentially seeking an end-around the jurisdictional constraint of the citizen-suit provision, and asking the Court to take jurisdiction over a discretionary duty for EPA.  The Court rejects the invitation.  *See United States v. Idaho*, 508 U.S. 1, 6-7 (1993) (holding the waivers of sovereign immunity must be strictly construed in favor of the United States).  Therefore, the Court finds that the requirement that the EPA "assume jurisdiction" to issue a permit is not a non-discretionary "duty or act" sufficient to trigger this Court's jurisdiction under the CWA. *See* 33 U.S.C. § 1365(a)(2).

**II. Duty Derived from EPA Regulations**

The EPA regulation implementing CWA section 402(d)(4) provides that "if a public hearing is held . . . and the State does not resubmit a permit revised to meet the Regional Administrator's objection or modified objection within 30 days of the date of the Regional Administrator's notification under paragraph (g) of this section, the Regional Administrator *may* issue the permit . . ."  40 C.F.R. § 123.44(h)(2) (emphasis added).

There are several reasons why this regulation does not

create a non-discretionary duty for the EPA sufficient to trigger citizen-suit jurisdiction. As an initial matter, it is not clear whether a regulation can provide such a duty, or whether the duty must be created by statutory provisions of the CWA itself. The D.C. Circuit has noted that this is an open question, but has not resolved it. *See Nat'l Wildlife Fed'n*, 127 F.3d at 1128-29 (holding that it need not answer the question because, even if regulations can provide bases for CWA citizen suits, the regulation in question did not create a non-discretionary duty). The Court similarly need not decide the question here because this EPA regulation does not create a non-discretionary duty sufficient for a CWA citizen suit.

The first problem with Plaintiff's argument is that Florida followed the procedure laid out in the regulation and had its permit approved. On January 3, 2005, EPA sent notification to Florida of its revised objections following the public hearing. Within 30 days, on February 2, 2005, Florida submitted a revised proposed permit. Since Florida responded to the revised objections within 30 days, EPA never acquired the authority to issue its own permit under 40 C.F.R. § 123.44(h)(2). Therefore, in this case, the EPA regulation did not create a duty for the EPA to either assume jurisdiction or issue a permit. Therefore, the regulation cannot serve as a basis for plaintiff's suit.

The second problem is that even if EPA duties were triggered

by the regulation, they would be of the same nature as those discussed in section I, *supra*. Specifically, the regulation could create a discretionary duty to issue a permit, which could only be challenged in the D.C. Circuit, or a trivial "duty" to assume jurisdiction, which is not tangible enough to provide jurisdiction for this Court. Therefore, the EPA regulation does not create a non-discretionary "duty or act" sufficient to trigger this Court's jurisdiction under the CWA.

**III. Duty Derived from Florida Regulations or EPA-Florida MOA**

Plaintiff's final argument is that EPA has a non-discretionary duty under Florida's regulations that govern the state's NPDES permitting process. Florida's regulations were approved as part of the EPA's approval of the state's NPDES program. *See* 60 Fed. Reg. 25718 (May 12, 1995). The state regulations specifically address the process when EPA objects to permits:

> If EPA objects to issuance of the permit, in accordance with 40 C.F.R. 123.44 and in writing within 90 days of submittal to EPA, and the Department fails to submit to EPA a revised permit satisfying the objections in accordance with the following timeframe, *exclusive authority to issue the NPDES permit under 33 U.S.C. 1342 passes to EPA* and the Department retains authority to issue a state permit under Section 403.088, F.S. The Department shall have 90 days from receipt of the EPA objections, or 30 days from the date of a public hearing on the objections, to submit a revised permit to EPA. The Department shall advise the applicant of the EPA objections.

Fla. Admin. Code Ann. r. 62-620.510(18)(b) (emphasis added).

In addition, EPA and Florida set out policies and procedures for the state's NPDES program in a Memorandum of Agreement ("MOA"). *See* 40 C.F.R. § 123.24. The MOA also addresses EPA permit objections: "Department requests for a hearing on the objection and the procedure for resolving the objection shall be governed by 40 C.F.R. 123.44. If EPA objections are not satisfied within 90 days of the objection (or thirty days following a public hearing on the objection), *exclusive authority to issue the permit vests in EPA*." NPDES MOA Between Florida and EPA, Pl.'s Ex. 9 at 13 (emphasis added).

Plaintiff argues that since Florida did not submit a revised permit within 30 days of the public hearing, these provisions created a non-discretionary duty for the EPA to assume jurisdiction to issue the permit. There are several preliminary issues that would have to be resolved in Plaintiff's favor in order for the Court to find that these provisions create a non-discretionary duty for the EPA.

First, it is unclear whether an enforceable duty under the CWA citizen-suit provision can be created by either a state regulation or state-EPA MOA. As previously noted, it is an open question whether an EPA regulation can create a cognizable duty. It is one more step removed to decide whether an approved state regulation or MOA can create such a duty.

Second, defendants argue that the Florida regulation and MOA

are perfectly consistent with its regulation. Defendants note that both provisions indicate that 40 C.F.R. § 123.44 is to govern the procedures for these situations. Defendants' interpretation, consistent with EPA's regulation, is that the public hearing is not completed until EPA sends the state its notification based on the hearing. *See* 40 C.F.R. § 123.44(g). Under this reading, both Florida provisions mandate that the state resubmit a permit within 30 days of the EPA's notification after the hearing. If the state fails to do so, jurisdiction to issue the permit passes to EPA. This is exactly the procedure specified in section 123.44(h) and used in this case. Plaintiff argues that this interpretation is absurd, and that the Florida provisions require EPA to assume jurisdiction within 30 days of the hearing, regardless of any notification.

Third, if the Florida provisions are inconsistent with the EPA regulations, defendants argue that EPA's regulations take precedent. Plaintiff, on the other hand, argues that EPA waived its procedures in favor of those in Florida's regulations pursuant to the waiver provision in 33 U.S.C. § 1342(e). Defendants respond that this provision only allows for wholesale waiver of EPA's oversight of state NPDES permits, and not selective waiver of certain procedures.

The Court need not resolve these questions, however, because even assuming the Florida provisions could create a valid non-

discretionary EPA duty, they do not so in this case. If EPA duties were triggered by the provisions, they would be of the same nature as those discussed in section I, *supra*. Specifically, the provisions could create a discretionary duty to issue a permit, which could only be challenged in the D.C. Circuit, or a trivial "duty" to assume jurisdiction, which is not tangible enough to provide jurisdiction for this Court. The provisions, in fact, make clear that EPA's assumption of jurisdiction is automatic and do not require action by any party. *See* Fla. Admin. Code Ann. r. 62-620.510(18)(b) ("exclusive authority . . . passes to EPA"); Florida-EPA MOA, Pl.'s Ex. 9 at 13 ("exclusive authority . . . vests in EPA"). Therefore, the Florida provisions do not create a non-discretionary "duty or act" sufficient to trigger this Court's jurisdiction under the CWA. *See* 33 U.S.C. § 1365(a)(2).

## CONCLUSION

The Court concludes that it lacks jurisdiction over Plaintiff's claims under the CWA citizen-suit waiver of sovereign immunity. Accordingly, defendants' Motion for Summary Judgment is **GRANTED** and plaintiff's Motion for Summary Judgment is **DENIED.** The Court therefore need not address defendants' Motion for Reconsideration, and it is **DENIED** as moot. An appropriate Order accompanies this Memorandum Opinion.

**Signed:   Emmet G. Sullivan**
**United States District Judge**
**February 26, 2007**